JOLLY *v.* THE STATE, 8 Smedes & Marshall, 145.

### SELLING LIQUOR TO A SLAVE.

On the trial of a man, under the statute against selling liquor to slaves without permission of the master, it appears that some persons, who suspected the defendant of a violation of the statute, sent a negro belonging to one of them, with money and a jug, and told him to get some whisky, and the defendant sold him the whisky; whereupon the court instructed the jury, "that permission to the slave to buy liquor of any one, did not satisfy the statute, which required permission to the seller." This instruction was erroneous, as a permission to buy implied a permission to the vendor to sell; the fact should have been left to the jury to say, whether the master gave the slave permission to buy, or whether the slave was sent to ascertain and fix the fact that the vendor would sell without permission, and did so sell. If the jury believe the former, they should find for the defendant; if the latter, they should find against him.

The delivery of money to a slave by his master, with instructions to buy whisky with it from a person whom he suspects of having sold whisky in violation of the statute to his slaves, for the purpose of detecting the offender, if guilty, does not excuse the sale of whisky to the slave for money; it is not such permission to the slave as was contemplated by the statute.

Error to circuit court of Marshall county.

Joseph Jolly was indicted for having sold spirituous liquors to a certain slave, named John, without permission of his master, etc. He was tried and found guilty, and thereupon moved for a new trial, but the motion was overruled, and exceptions taken. Armstead, a witness for the state, testified that in November, 1845, suspecting the defendant of unlawful dealings with slaves, he and several others, for the purpose of detecting him, went at night to the house of defendant, taking with them the negro man John, the slave of one of the party, and some spun-thread and other articles, which they concealed near by. The negro roused defendant from his sleep, and offered to trade with him for liquor. He refused to trade liquor for the articles, but would sell it to the negro for money. John went to the party and got the money from one of them in presence of his master, and was directed to take it, and a jug, and get the whisky in it. The slave did so, and returned with the whisky. Another witness testified to the same effect. The court was asked by the state to instruct the jury that " permission to the slave to buy spirituous liquors of any one will not satisfy the statute ; that it requires permission to be given the seller thereof, to make the act justifiable in the eye of the law ; that the owner of the slave being willing, for the purpose of detection, for his slave to buy spirituous liquor of any one, will not, in the eye of the law, justify that one in selling to such slave ; that if the jury believe from the testimony that the defendant sold the liquor to the slave without permission of the master, etc., given to the defendant, and not to the slave, they must find the prisoner guilty." These charges were given and excepted to by the defendant, who asked the court to instruct the jury, that if they " believed from the evidence that the slave was furnished with the money to purchase the liquor by the master, owner, or overseer, and was instructed by them or either of them, to purchase the liquor from the defendant, in that case the sale to the slave was not a violation of the statute." This charge was refused, and exceptions taken.

*D. S. Jennings* for the plaintiff in error.

1. The court erred in giving the charges they did give, and in refusing that asked by defendant.

2. The court erred in refusing to grant a new trial.

There are but two questions for the court to consider.

1. Was there a sale to the slave within the true intent and meaning of the act of 1842? The testimony shows that the sale was made to the slave *as the agent* of the master, to whom, consequently, the sale was really made. "A sale or exchange is a tranfer of property *from* one man *to* another in consideration of some *price* or recompense in value." Chit. on Con. 107, 108; Shep. Touch., 218. A slave may be an agent. Story's Agency, 9; 9 Yerg. R., 205, 206. And the slave, in this case, purchased in that character. See also Story's Agency, 291 (in note), 9 B. & Cres., 78.

2. The other question supposes the one already discussed to be decided affirmatively. It is, was this sale without the permission of the master," etc., and within the prohibition of the statute on which the indictment is founded. The facts make it necessary to determine what meaning the legislature attached to the word "permission" in the act of 1842. As the word has no technical meaning, it must be taken in its usual acceptation. Webster thus defines the word " to permit," " to allow, to grant leave or liberty by express consent, to allow by silent consent or by not prohibiting, to suffer without giving express authority." The slave, then, to constitute a violation of the act, must be against the will, *in invito domino*, of the master, etc.; in other words, it must be without the assent of the master, etc. Meigs's Rep., 84.

*John D. Freeman*, attorney general.

CLAYTON, J.:

This is an indictment framed upon the act of 1842, made to prevent the selling of vinous or spirituous liquors to a slave without permission of his master. The defendant was found guilty in the court below, and the case comes by writ of error to this court.

The proof was, that several persons suspecting the defendant of a violation of this statute, went in the night near to his house and sent a negro belonging to one of them with money and a jug and told him to get some whisky. The witnesses were concealed. Defendant sold the whisky to the negro.

Upon this state of facts, the court charged the jury, "that permission to the slave to buy spirituous liquors of any one will not satisfy the statute, which requires permission to be given to the seller. That the owner of the slave being willing, for the purpose of detection, for his slave to buy spirituous liquors of any one, will not justify the sale to such slave; the permission must be given to the seller." The defendant asked the court to charge the jury, "that if the slave was furnished with the money to purchase the liquor by his master, and was instructed to buy the liquor from the defendant, then the sale thereof by the defendant does not make him guilty." This charge the court refused.

The first part of the charge given by the court lays down the law too broadly, even with the qualification which seems to be contained in the other part. A permission to the slave to buy, in itself implies a permission to the vendor to sell.

But, in this case, the question arises, was there a permission given to the slave to buy, or was it merely an experiment to see if the defendant would sell without permission? In other words, was it not a plan to detect the defendant in a violation of the law, by seeing him sell spirituous liquor without a permission to the slave to buy. The true point is, whether the master was willing for the slave to buy the liquor of the defendant, and gave him permission to do so. This point is for the determination of the jury. If, from the evidence, they should be of opinion that permission was given to the slave by the master, mistress, owner or overseer to buy the liquor, then the offense is not committed, though the permission were given to the slave and not to the seller. But if they should be of opinion that permission was not given to buy, but that the slave was sent to ascertain and fix the fact that the defendant would sell without permission, and the sale took place under these circumstances, then the offense would be consummated.

In the case of The State v. Anone, 2 Nott & M'Cord, 30, the law is thus laid down upon a similar statute: "It has long been decided that the master's delivery of any article to a slave, and standing by for the purpose of detecting an offender who may trade with the slave, does not legalize the trading." "When

the owner goes in order to detect, and for that purpose merely eyes the traffic carried on, giving to the offender no real or apparent intimation of his assent, there can be no inference that he assents to the traffic ; and the policy of the law sanctions a practice so essential to the exposure of skillful traders."

The object of the statute under consideration cannot be mistaken. It is to prevent the demoralizing influence of drunkenness and its attendant vices upon the slaves, which constitute so large a portion of our population. As one of the guards for the security and well-being of society, a traffic in this article with slaves is prohibited unless with the consent of the master. It is a traffic which it is hard to detect, and it would be singular if a resort to almost the only means of detection should have the effect to legalize the transaction. Such traffic, without the consent of the master, mistress, owner or overseer, is a breach of the statute ; and the consent must be to a sale of the liquors, not merely to an experiment to detect a violation of the law.

For the error in the charge of the court below, the judgment will be reversed, and a new trial granted in accordance with the principles here laid down.

Cause remanded and a new trial granted.