BOND v. THE STATE, 13 Smedes & Marshall, 265.

SELLING LIQUOR TO SLAVES.

Instructions granted for the state, not excepted to at the time they were given, nor made grounds for a new trial, will not be considered on error to the high court of errors and appeals.

If, from the evidence, the jury should be of opinion that permission is given to a slave by the master, mistress, owner, or overseer, to buy liquor, then the offense is not committed, though the permission is given to the slave and not to the sellers. But if they should be of opinion that permission was not given to buy, but that the slave was sent to ascertain and fix the fact that the defendant would sell without permission, and the sale took place under these circumstances, then the offense is consummated.

An employer's delivery of an article to a slave, and afterwards standing by to detect the offender who may trade with the slave, does not legalize the trading.

Error to Yazoo circuit court. PERRY, J.

The opinion of the court contains a sufficient statement of the case.

[No counsel is marked for the plaintiff in error.]

*D. C. Glenn*, attorney for the state, argued the case orally.

SMITH, J.:

The plaintiff in error was convicted in the circuit court of Yazoo county, of the offense of selling spirituous liquor to a slave without the permission of the master or owner.

Exceptions were taken at the trial to the introduction of evidence offered in behalf of the prosecution. These, however appear to have been abandoned, as they have not been pressed upon the consideration of the court.

The instructions granted at the instance of the prosecuting attorney will not be noticed. They were not excepted to at the time, and have not been made a ground for the motion for a new trial, which was made in the court below and overruled. Hence, the only question which we have to consider of, is the propriety of the decision on the said motion.

The finding of the jury in this case, necessarily embraced two propositions: 1, That the defendant did in fact sell spirituous liquor to a slave. 2. That the sale was made without the permission of the master, owner, or overseer.

In reference to the first, we think the evidence was sufficient to warrant the conclusion drawn by the jury. The proofs were such as to leave no reasonable doubt on their minds that the liquor was furnished to the negroes by the defendant or delivered to them by his direction, in payment of the articles deposited at his house on the preceding night.

In regard to the second, the question is not so easily settled. In relation to this point, the testimony of Chew, the only witness for the prosecution, was, that this witness accompanied two of his negroes, late at night, to a place near the house of the defendant, the negroes taking with them peas and potatoes to sell to him. This was done by the permission of the witness. The articles were deliverd to a negro woman in the employment of the defendant. This was done by the direction of a person in the house, who had been aroused by the negroes, and whom the witness, from his voice, believed to be the defendant. This person said to the negroes. " Leave your things, go away, and re-

turn in the morning or some other time, and I will settle with you." Witness with the negroes returned on the next morning, between daylight and sunrise; he saw the negroes enter the defendant's house and come out of it, after remaining a short time, bringing with them whisky and tobacco, which they had procured from some one in the house.

Here was a plan laid for the detection of the defendant, and the conclusion cannot be resisted, that in making the sale, he designed to violate the statute. The question, then, which we have to determine is, whether the permission given to the negroes to sell the articles, and the presence of the master during the transaction, which were unknown to the defendant, had the effect to legalize the sale; or, in other words, were the jury, from the proofs before them, authorized to find that the sale was made without the permission of the master, according to the proper construction of the statute?

This question, arising upon facts very similar to those above detailed, was presented to this court in the case of Jolly v. The State, 8 S. & M., 145. The proofs in that case showed that several persons, suspecting the defendant of a violation of the statute under which this conviction was had, went in the night near to his house, and sent a negro belonging to one of them with money and a jug and told him to get some whisky. The witnesses were concealed. The defendant sold the whisky to the negro. The court, in commenting upon these facts, remarked: "In this case the question arises, Was the permission given to the slave to buy, or was it merely an experiment to see if the defendant would sell without permission? In other words, was it not a plan to detect the defendant in a violation of the law, by seeing him sell spirituous liquor without a permission to the slave to buy? The true point is, whether the master was willing that the slave should buy the liquor of the defendant and gave him permission to do so. This point is for the determination of the jury. If, from the evidence, they should be of the opinion, that permission was given to the slave by the master, mistress, owner or overseer, to buy the liquor, then the offense is not committed, though the permission were given to the slave and not to the seller. But if they should be of opinion, that permission was

not given to buy, but that the slave was sent to ascertain and fix the fact that the defendant would sell without permission, and the sale took place under these circumstances, then the offense was consummated."

The principle of this case is, that the permission given to buy the liquor, though given to the slave and not the vendor, will legalize the sale; but that the mere presence of the master, mistress, owner or overseer, and their knowledge, or witnessing the transaction, will not have that effect. In the case under examination, the permission was to sell the articles which the slaves had in their possession to the defendant, and not to receive in payment whisky, money, or any other specific commodity. It cannot, therefore, be said that permission was given to buy the liquor.

In the case of The State v. Anone, 2 Nott & McCord, 27, cited by this court in Jolly's case, a broader and more comprehensive construction was given to a statute similar to this. The witness, upon whose testimony Anone was convicted, was the overseer of the slave. He had given corn to the negro and had sent him to Anone's store for the purpose of detecting him in trading illegally. He witnessed the transaction, but did not interfere or forbid the trade. These facts were held to be no justification or excuse. The court said, "It has long since been decided that an employer's delivery of an article to a slave, and afterwards standing by for the purpose of detecting an offender who may trade with the slave, does not legalize the trading." The decision in that case rests on the ground, that the permission intended by the statute was, where the master or owner in reality designed to allow his slave to trade, and for the ordinary purposes of such trafic, and not where the object is merely to detect an offender against the law.

In the construction which the courts of South Carolina have given to the statute, the illegal intention of the purchaser or vendor is made the principal subject of consideration. The delivery of an article by the master to his slave, to be sold for the purpose of detecting the vendor, and his presence at the sale, is held to be no excuse to the purchaser, unless, by some intimation given by the master, the vendor may fairly infer his assent.

In cases similar to the one under examination, it is obvious that the delinquent can never claim exemption on the ground of the innocency of his intentions. No one can be convicted upon this construction unless he shall have at least designed to violate the statute. There is, therefore, no objection on the ground that it would operate oppressively, and the manifest policy of this interpretation commends it strongly to the favorable consideration of our courts. But whether we test the finding of the jury in this case by the principle recognized in Jolly v. The State, or by the law as laid down in the case cited from Nott v. McCord, we cannot say that it was unauthorized by the evidence. We therefore affirm the judgment.